■ In the Matter of ROSE MARIE M. In the Matter of PATTY ANN M. CHARLES W. BATES, as Commissioner, Respondent; MARIA J., Appellant. — Appeals from two orders of the Family Court, Westchester County (Palella, J.), both entered June 2, 1981, which, in proceedings pursuant to section 384-b of the Social Services Law, permanently terminated the parental rights of the appellant as the natural mother of two minor children upon the ground of abandonment (see Social Services Law, § 384-b, subd 4, par [b]; subd 5, pars [a], [b]). Orders reversed, on the law, without costs or disbursements, and proceedings remitted to the Family Court for a new hearing whereat the fact-finding determination shall be by a standard of clear and convincing evidence. The questions of fact herein have not been considered. Subsequent to the instant adjudications and during the pendency of the appellate process, the Supreme Court of the United States in *Santosky v Kramer* (455 US 745, 102 S Ct 1388) held that to the extent that section 622 of the Family Court Act permitted the permanent termination of the natural parents' right to the custody of their children upon a showing by the State, at a fact-finding hearing, of parental neglect by a fair preponderance of the evidence, such procedure did not provide a constitutionally adequate evidentiary standard of proof to protect against the risk of error inherent in the given truth-finding process, nor was it commensurate with the gravity and permanency of the threatened loss which may befall the parent. In finding that such standard of proof was inconsistent with due process in such circumstances, the court described the nature of the parental interest sought to be terminated in such proceeding, as follows (pp 753-754): "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." We note that the same due process deficiency permeated the former comparable provisions of section 384-b of the Social Services Law in force at the time the fact-finding adjudications in the instant proceedings were made, but amended during the course of this appeal (L 1982, ch 123, § 1). The former provisions permitted the permanent termination of parental status, upon a showing of "abandonment" "for the period of six months immediately prior to

the date on which the petition is filed in the court" (subd 4, par [b]), "upon a fair preponderance of the evidence" (former subd 3, par [g]). Equating the need for a higher standard of proof than a "preponderance of the evidence" in proceedings to adjudicate juvenile delinquency, where "consideration of the quantity, rather than the quality, of the evidence" (p 764) may result in fact-finding error, with similar concerns with respect to proceedings, as here, involving the termination of parental status, the court held (p 764): "Raising the standard of proof would have both practical and symbolic consequences. Cf. *Addington* v. *Texas,* 441 U. S., at 426. The Court has long considered the heightened standard of proof used in criminal prosecutions to be 'a prime instrument for reducing the risk of convictions resting on factual error.' *In re Winship,* 397 U. S., at 363. An elevated standard of proof in a parental rights termination proceeding would alleviate 'the possible risk that a factfinder might decide to [deprive] an individual based solely on a few isolated instances of unusual conduct [or] . . . idiosyncratic behavior.' *Addington* v. *Texas,* 441 U. S., at 427. 'Increasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate' terminations will be ordered." In dealing with the question as to whether the rule expressed in *Santosky v Kramer (supra),* that due process demands a standard of clear and convincing proof at the fact-finding level before parental custody may be permanently terminated shall be afforded retroactive effect herein, we find that such rule was announced to overcome a substantial risk of error in the truth-finding function of such proceeding and shall, therefore, be given retroactive effect in the instant matter which is still in the appellate process (see *Ivan v City of New York,* 407 US 203). Consistent with the rule expressed in *Santosky v Kramer (supra,* p 757) that "[s]ince the litigants and the factfinder must know at the outset of a given proceeding how the risk of error will be allocated, the standard of proof necessarily must be calibrated in advance", and inasmuch as an incorrect standard of proof had been applied by the Family Court herein, the orders are therefore reversed and the matter remitted for a new hearing and adjudications based upon the proper constitutional standard of proof (*Matter of Louis H.,* 36 AD2d 912). Gibbons, J. P., Weinstein, O'Connor and Boyers, JJ., concur.