OPINION OF THE COURT
Minna R. Buck, J.
Respondent father, through his counsel, moved to dismiss the petition filed on August 22, 1985 seeking to terminate his parental rights on the grounds of abandonment of the above-mentioned child, born March 2, 1982. The petition alleged, inter alia, that respondent father failed to visit or contact the child or the Onondaga County Department of Social Services (hereinafter DSS), with whom the child has been placed since birth, for a period of six months prior to the filing of the petition and that respondent father was able to communicate and visit with said child and the agency did not "prevent or discourage him from so doing.”
Respondent’s counsel argues that his client was incarcerated at a State facility at the time of the child’s birth, and has been continuously imprisoned to the present time; that respondent is unable to read or write, a fact he alleges is known to DSS; and that DSS has not consented to visitation between *149 respondent and the child, on the grounds that such visitation, which could only occur at the State prison in which respondent is confined, would not be in the child’s best interests. DSS has not disputed these facts, and it is respondent’s contention that, taken together, they refute the factual allegations upon which the claim of abandonment by the respondent father is based. Specifically, respondent argues that it is conceded that DSS prevented visitation between respondent and the child, and it cannot be presumed that he was able to visit with the child in view of the child’s age and respondent’s illiteracy.
The court finds respondent’s arguments without merit. The applicable sections of the statute provide that parental rights may be terminated upon the ground that: "The parent or parents, whose consent to the adoption of the child would otherwise be required in accordance with section one hundred eleven of the domestic relations law, abandoned such child for the period of six months immediately prior to the date on which the petition is filed in the court” (Social Services Law § 384-b [4] [b]). The statute further provides: "For the purposes of this section, a child is 'abandoned’ by his parent if such parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, such ability to visit and communicate shall be presumed.” (Social Services Law § 384-b [5] [a]; emphasis added.) Respondent has not alleged that he was unable to communicate with the petitioner agency or that they prevented or discouraged him from doing so. Indeed, he acknowledges that he was served by the agency with notice of more than one petition brought by the agency involving this child, and was represented therein by counsel. While he may have been prevented by his illiteracy from writing to the child, it is not self-evident that this condition precluded all other forms of communication with the child, even under the constraints imposed by his incarceration, or that the age of the child or other circumstance was a bar to all forms of communication. These are factual issues which may be addressed in the course of a hearing on the petition, and may not be disposed of summarily.
Representations as to respondent’s subjective intent are also inapposite on this motion to dismiss, and may be left to the *150 hearing (Social Services Law § 384-b [5] [b]; Matter of Rose Marie M., 94 AD2d 734).
Accordingly, it is ordered that respondent father’s motion to dismiss is denied. The parties are directed to appear for hearing in Part 5 on November 27, 1985, at 11:00 a.m.